# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **SUN-MAID GROWERS OF CALIFORNIA**<br><br>13525 S. Bethel Ave.<br>Kingsburg, CA 93631-9232<br><br>     Plaintiff,<br><br> v.<br><br>**THE UNITED STATES DEPARTMENT OF AGRICULTURE and THOMAS J. VILSACK, IN HIS OFFICIAL CAPACITY AS SECRETARY OF AGRICULTURE**<br><br>Service Upon:<br><br>Jeffrey Prieto, Acting General Counsel<br>Office of the General Counsel<br>Room 107W, Whitten Building<br>1400 Independence Ave, SW.<br>Washington, D.C. 20250-1400<br><br>     Defendants. | Case __:15-cv-_____-___-___<br><br><br><br><br><br>**COMPLAINT FOR DECLARATORY RELIEF; REVIEW OF AGENCY ACTION (5 U.S.C. § 502 *ET SEQ.*)** |

## COMPLAINT

Plaintiff Sun-Maid Growers of California ("Sun-Maid"), through its undersigned attorneys, hereby sues the United States Department of Agriculture and Thomas J. Vilsack, the Secretary of Agriculture (collectively "USDA"), and alleges as follows:

### Nature of the Action

1. This is an action for review under the Administrative Procedure Act ("APA") of the USDA's arbitrary and capricious denial—and arbitrary and capricious failure to explain its denial—of Sun-Maid's November 17, 2014, petition to initiate rulemaking, which requested that the Secretary of Agriculture suspend and ultimately revoke outdated volume regulations contained in the California Raisin Marketing Order, 7 C.F.R. Part 989.

**Jurisdiction and Venue**

2.  This Court has subject-matter jurisdiction over this action under 28 U.S.C. § 1331 and 5 U.S.C. § 702.

3.  Venue is proper in this district under 28 U.S.C. § 1391(e) because Defendant Vilsack is an officer or employee of the United States, and the District of Columbia is where the USDA resides and where a substantial part of the events giving rise to Plaintiff's claims occurred.

**Parties**

4.  Plaintiff Sun-Maid is an agricultural marketing cooperative owned and operated by approximately 650 family farmers. Its principal place of business is Kingsburg, California. This Complaint is brought on behalf of Sun-Maid's family farmers in their capacity as "producers" of raisins, and any reference to "Sun-Maid" herein refers to these family farmers.

5.  Defendants are the United States Department of Agriculture and Thomas J. Vilsack, in his official capacity as the Secretary of Agriculture.

**Statutory Background**

6.  The Agricultural Marketing Agreement Act of 1937 ("AMAA"), 7 U.S.C. § 601 *et seq.*, directs the Secretary of Agriculture ("Secretary") to issue "marketing orders" regulating the marketing and sale of agricultural commodities. *See* 7 U.S.C. § 608c. Although such marketing orders are intended to benefit "producers" of agricultural commodities, they apply directly only to "handlers" of such commodities. *See* 7 U.S.C. §§ 608c(1), 608c(9). As noted by the Supreme Court, marketing orders create a "cooperative venture" among the Secretary, the "producers" who grow the commodity, and the "handlers" who process the commodity for marketing. *See Block v. Cmty. Nutrition Inst.,* 467 U.S. 340, 346 (1984).

7. When issuing a marketing order, the Secretary is authorized to include terms that limit, or provide methods for the limitation of, the amount of an agricultural commodity that may be marketed in a crop year. *See* 7 U.S.C. § 608c(6)(A). The Secretary may also establish, or provide for the establishment of, "reserve pools" of a commodity. *See* 7 U.S.C. § 608c(6)(E). In this way, the Secretary can regulate the supply of an agricultural commodity that reaches the commercial market, and thereby promote "orderly marketing" to avoid unreasonable fluctuations in supplies and prices. 7 U.S.C. § 602.

### The California Raisin Marketing Order

8. After World War II, world trade was struggling and U.S. producers of agricultural commodities had production capabilities that exceeded their ability to sell their crop in commercial markets. The California raisin industry was no exception. Faced with large wine grape inventories, farmers shifted use of acres of raisin-variety grapes from wine production to raisin production and converted surplus grapes into raisins. Simultaneously, exports of raisins dropped. As a result, the amount of raisins grown far exceeded the amount that could be economically marketed, leading to a sharp decline in the price of raisins.

9. In 1949, the Secretary used the AMAA's grant of authority to issue the California Raisin Marketing Order ("Marketing Order"). *See* 7 C.F.R. Part 989. The Marketing Order was intended to "stabilize" the price of raisins by way of a "reserve pool," which would limit the supply of raisins reaching the commercial market in a given crop year. To establish such a "reserve pool," the Secretary is permitted to order "handlers" of raisins to hold a certain percentage of producers' yearly raisin crop in reserve, thereby preventing this surplus from reaching the commercial market. *See* 7 C.F.R. §§ 989.65-989.71.

10. Under the Marketing Order, the size of a given crop year's reserve pool is designated by the Secretary, who relies upon recommendations from the Raisin Administrative Committee ("RAC"). *See* 7 C.F.R. §§ 989.54-989.55. The RAC is composed of 46 industry representatives and one representative of the public, and is responsible for administering the Marketing Order. *See* 7 C.F.R. §§ 989.26, 989.29-30, 989.35-36.

11. The RAC determines the recommended size for a given crop year's reserve pool by, in part, applying the so-called "Trade Demand" formula, which the Marketing Order defines. *See* 7 C.F.R. § 989.54. The RAC also considers additional factors concerning supply, demand, estimated production, pricing, and other market conditions. *See* 7 C.F.R. § 989.55.

12. After considering these factors, the RAC is directed to estimate the size of the reserve pool by October 5 and recommend the final reserve pool by February 15 of each crop year. If a reserve pool is recommended, the USDA thereafter designates it via interim and final rules—a process that can extend into June of a crop year, which closes on July 31. *See* 7 C.F.R. §§ 989.54-55.

13. Starting in 2010, fundamental changes in market conditions (*see infra*, ¶¶ 15.A-15.C below) led the RAC to decline to recommend volume restrictions in the form of a reserve pool. The Secretary followed these recommendations and did not establish reserve-pool requirements in the 2010-2011, 2011-2012, 2012-2013, 2013-2014, and 2014-2015 crop years.

14. Nevertheless, the very existence of the Marketing Order—and the yearly prospect that volume restrictions might be imposed—impedes growth, investment, and reinvestment by raisin producers, even if such restrictions are not imposed. The prospect of volume restrictions deprives producers of the ability to make either short-term or long-term predictions about the marketing of their crops. This unpredictability makes it more difficult for producers, particularly

those that are smaller or are not vertically integrated, to obtain credit financing. The Marketing Order thus impedes long-term planning, even if, in any given year, the Secretary does not invoke his authority to restrict volume.

## Sun-Maid's Petition to Initiate Rulemaking

15. On November 17, 2014, Sun-Maid's family farmers petitioned the Secretary under 7 C.F.R. § 900.30 and 5 U.S.C. § 553(e) to initiate rulemaking amending the Marketing Order to suspend and ultimately revoke the volume regulations. *See* Exhibit A hereto. The Petition set forth reasons for the growers' request, including the following:

- A. The facts and circumstances that originally justified the Marketing Order's volume regulations no longer exist. Specifically, the original rationale for the Marketing Order—a shift in use of raisin-variety grape acreage from wine to raisin production—is unlikely to occur again or be substantial in effect;

- B. Volume regulation has inhibited industry development, as evidenced by a decline in raisin-variety grape acreage and an exponential increase in acreage devoted to agricultural commodities produced and marketed on a free-market basis;

- C. The raisin industry's power balance has shifted from many small acreage producers to a split between such small producers and a few large producers that are vertically integrated with their own packinghouses. These large producers are better equipped to weather volume restrictions, creating a power imbalance that could be eliminated in a free-market system;

- D. Volume regulation stimulates competition from imported raisins but prohibits domestic producers from competing, which they have demonstrated they can do effectively;

- E. The uncertainty of whether volume regulations will be imposed from year to year—and, if imposed, the size of any reserve pool—raises barriers to growth, investment and reinvestment in the raisin industry by producers;

- F. Experience establishes that volume regulation is no longer needed to promote industry stability, for the industry has been bolstered by five consecutive crop years without any volume regulation; and

  G. The trade-demand formula is outdated and subject to manipulation, leaving imposition of a reserve pool at the unchecked discretion of competing handlers on the RAC.

  16. The Petition also contained this additional, and prominent, assertion: That rulemaking was necessary because the process to update, amend, and modernize the Marketing Order "has broken down." Ex. A at 8. Under the Marketing Order, the RAC recommends to the Secretary amendments, updates, or other modernizing regulations. *See* 7 C.F.R. § 989.35; 7 U.S.C. § 608c(7)(C). The Petition alleged however, that "[t]he raisin industry has not been effective in completing the process to secure much needed amendments to update the [Marketing] Order and have it reflect current and projected circumstances for the industry." Ex. A at 8. For this reason, it asserted, "[t]he Secretary needs to become involved to initiate an amendment process if there are ever going to be significant changes to modernize the [Marketing] Order." *Id.* at 12. In support of this allegation, the Petition cited correspondence, dating to 1999, in which the Secretary had unsuccessfully urged the RAC to take action.

### The Secretary's Denial of the Petition

  17. On January 7, 2015, the Secretary of Agriculture, Thomas J. Vilsack, responded to Sun-Maid's Petition with a short denial. *See* Ex. B hereto. Secretary Vilsack's response did not address any of the points raised in Sun-Maid's Petition, including the Petition's assertion that the process to update the Marketing Order "has broken down."

  18. Instead, Secretary Vilsack noted that "[i]t is our understanding that Sun-Maid, as represented on the Raisin Administrative Committee, was part of the unanimous vote that resulted in the establishment of the Rulemaking Workgroup recently charged with reviewing the marketing order for possible amendments." Accordingly, Secretary Vilsack requested that "Sun-Maid continue working through the Raisin Administrative Committee and its 11-member

Rulemaking Workgroup to express [its] constituents' perspectives, and find common ground on amendments to handling regulations and program administration."

19. In addition to failing to acknowledge or respond to the Petition's substantive points, Secretary Vilsack did not respond to the Petition's contention that the RAC process "has broken down." Instead, without explanation, he directed Sun-Maid's growers to work within the very process they had alleged was broken.

20. The Secretary's denial failed to explain the grounds upon which it was based, and did not evince reasoned decision making. In particular, the Secretary's denial does not demonstrate that he considered any of the points Sun-Maid's Petition raised, or, if he did, why he found them unpersuasive. This is best evidenced by the Secretary's failure to even address Sun-Maid's showing that the very process to which the Secretary again consigned Sun-Maid "has broken down."

21. The Secretary's denial also fails to account for the fundamentally changed factual circumstances underlying the Marketing Order, and ignores his clear duty under the AMAA to act for the benefit of producers—such as Sun-Maid's family farmers.

22. Accordingly, Sun-Maid's approximately 650 grower-members respectfully request that this Court declare that the Secretary's denial contravenes 5 U.S.C. § 555(e) and is arbitrary and capricious. Sun-Maid's grower-members ask that this Court vacate the Secretary's denial and remand this matter to the USDA with instruction that it reconsider Sun-Maid's Petition and provide a response that evinces reasoned decision making. At the very least, this Court should direct USDA to explain why the process to amend, update, and modernize the Marketing Order has not, as the Petition alleges, "broken down."

## FIRST CLAIM FOR RELIEF

**Failure to Explain**
**(Administrative Procedure Act; 5 U.S.C. § 555(e))**

23. Plaintiff repeats and realleges the preceding paragraphs of this Complaint as if fully stated herein.

24. The denial of a petition to initiate rulemaking must be accompanied by a brief statement of the grounds for denial. 5 U.S.C. § 555(e).

25. The Secretary's denial of Sun-Maid's Petition did not indicate its grounds for denial, as it did not respond to *any* of the Petition's contentions. Indeed, it failed to even address the Petition's contention that the RAC process "has broken down." Instead, without explanation, the Secretary directed Sun-Maid's growers to pursue redress through the very process they had alleged was broken.

26. This Court should vacate the USDA's denial of Sun-Maid's Petition and remand this matter to the USDA with instruction that it reconsider and respond to Sun-Maid's Petition with an adequate explanation of the basis for its response. At the very least, this Court should direct USDA to reconsider Sun-Maid's Petition and provide an adequate explanation as to why it believes the process to amend, update, and modernize the Marketing Order has not, as the Petition alleges, "broken down."

## SECOND CLAIM FOR RELIEF

**Arbitrary and Capricious Action**
**(Failure to Explain)**
**(Administrative Procedure Act; 5 U.S.C. § 706(2)(A))**

27. Plaintiff repeats and realleges the preceding paragraphs of this Complaint as if fully stated herein.

28. Pursuant to 5 U.S.C. § 706(2)(A), this Court must hold unlawful and set aside agency action, findings, and conclusions found to be arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law.

29. Agency action is arbitrary and capricious where it is not accompanied by an explanation that demonstrates the agency engaged in reasoned decision making.

30. At a minimum, to evince reasoned decision making, an agency must demonstrate it considered the relevant factors and explain the facts and policy concerns upon which it relied, all of which must have some basis in the record.

31. The Secretary's summary denial of Sun-Maid's Petition fails to explain why the Secretary did not credit Sun-Maid's contentions or how the Secretary reached his conclusion. Indeed, the Secretary's denial fails to address *any* of Sun-Maid's substantive points. Most importantly, it failed to address Sun-Maid's contention that the RAC process "has broken down."

32. The Secretary could not logically have consigned Sun-Maid to continue to work within the very system Sun-Maid's Petition claimed "has broken down" without first at least addressing Sun-Maid's claim that the process has, in fact, "broken down." But the Secretary's denial fails to explain how or why he reached his conclusion.

33. The Secretary's denial failed to explain what factors he considered or what facts or policy concerns he relied upon to reach his conclusion.

34. The Secretary's denial therefore fails to demonstrate it was the product of reasoned decision making, rendering it arbitrary and capricious.

35. This Court should declare the Secretary's denial of Sun-Maid's Petition was arbitrary and capricious, and should vacate this denial and remand this matter to the USDA with instruction that it reconsider and respond to Sun-Maid's Petition with a reasoned basis for its

decision. At the very least, this Court should direct USDA to provide a reasoned basis for its belief that the process to amend, update, and modernize the Marketing Order has not, as the Petition alleges, "broken down."

## THIRD CLAIM FOR RELIEF

**Arbitrary and Capricious Action**
**(Failure to Account for a Fundamental Change in Factual Circumstances)**
**(Administrative Procedure Act; 5 U.S.C. § 706(2)(A))**

36. Plaintiff repeats and realleges the preceding paragraphs of this Complaint as if fully stated herein.

37. Pursuant to 5 U.S.C. § 706(2)(A), this Court must hold unlawful and set aside agency action, findings, and conclusions found to be arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law.

38. Agency action is arbitrary and capricious where an agency refuses to initiate rulemaking despite a fundamental change in the factual premises that gave rise to the initial rule.

39. The Marketing Order was adopted in a post-WWII era where oversupply of raisins threatened to destabilize the industry and bankrupt producers of raisins.

40. There has been a fundamental change in the factual premises that gave rise to the initial Marketing Order and, specifically, its volume regulations.

41. As described in Sun-Maid's Petition, the raisin industry is no longer threatened with oversupply and all industry participants have flourished without volume regulations during the past five crop years.

42. The Secretary's refusal to initiate rulemaking suspending and ultimately terminating the Marketing Order's volume regulations, as demonstrated by his denial of Sun-Maid's Petition, therefore constitutes arbitrary and capricious action.

43. This Court should declare that the Secretary's denial of Sun-Maid's Petition was arbitrary and capricious, and should vacate this denial and remand this matter to the USDA with instruction that it reconsider Sun-Maid's Petition.

**FOURTH CLAIM FOR RELIEF**

**Arbitrary and Capricious Action**
**(Plain Error of Law)**
**(Administrative Procedure Act; 5 U.S.C. § 706(2)(A))**

44. Plaintiff repeats and realleges the preceding paragraphs of this Complaint as if fully stated herein.

45. Pursuant to 5 U.S.C. § 706(2)(A), this Court must hold unlawful and set aside agency action, findings, and conclusions found to be arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law.

46. Agency action is arbitrary and capricious where an agency's refusal to initiate rulemaking arises from a plain error of law.

47. The AMAA, 7 U.S.C. § 608c(16)(A), states that the Secretary of Agriculture "shall" terminate or suspend a marketing order provision when such provision "obstructs or does not tend to effectuate the declared policy of this chapter." *Cf.* 7 U.S.C. §§ 608c(3), (4) (directing the Secretary of Agriculture to issue a marketing order if he finds "that the issuance of such order and all of the terms and conditions thereof will tend to effectuate the declared policy of this chapter with respect to such commodity").

48. The AMAA's declared policy is to enhance producer returns via the orderly marketing of raisins. *See* 7 U.S.C. § 602(1) (declaring it the "policy of Congress" that the Secretary "establish and maintain such orderly marketing conditions... as will establish, as the prices to farmers, parity prices"); 7 U.S.C. § 602(4) ("policy of Congress" that the Secretary

11

"establish and maintain orderly marketing conditions for any agricultural commodity...as will provide, in the interests of producers and consumers, an orderly flow of the supply thereof to market throughout its normal marketing season to avoid unreasonable fluctuations in supplies and prices"); *see also* S. Rep. No. 1101, at 3 (1935) (explaining that the purpose of marketing agreements and orders "has... always been to raise producer prices").

49. As described in Sun-Maid's Petition, the Marketing Order fails to either enhance producer returns or ensure the orderly marketing of raisins. Instead, the ever-present risk of volume control under the Marketing Order creates uncertainty and prevents producers from obtaining reliably robust returns or long-term stability.

50. The Secretary has violated 7 U.S.C. § 608c(16)(A) by failing to initiate rulemaking to suspend and ultimately revoke the Marketing Order's volume regulations, as demonstrated by his denial of Sun-Maid's Petition.

51. By retaining volume regulations in the Marketing Order, the Secretary has failed to effectuate the purpose of the AMAA, thereby abdicating his statutory responsibility under 7 U.S.C. § 608c(16)(A).

52. The Secretary's denial therefore arises from a plain error of law, and constitutes arbitrary and capricious action.

53. This Court should declare that the Secretary's denial of Sun-Maid's Petition was arbitrary and capricious, and should vacate this denial and remand this matter to the USDA with instruction that it reconsider Sun-Maid's Petition.

### Prayer for Relief

**WHEREFORE**, based on the foregoing allegations, Plaintiff respectfully requests that this Court:

(a)     Declare, under the Declaratory Judgment Act, 28 U.S.C. § 2201, that the Secretary of Agriculture's denial of Sun-Maid's Petition failed to offer a brief statement of the grounds for denial as required under 5 U.S.C. § 555(e). At the very least, the Court should declare that by failing to explain why the process to amend, update, and modernize the Marketing Order has not, as the Petition alleges, "broken down," the Secretary violated 5 U.S.C. § 555(e);

(b)     Declare, under the Declaratory Judgment Act, 28 U.S.C. § 2201, that the Secretary of Agriculture's denial of Sun-Maid's Petition was arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law under 5 U.S.C. § 706(2)(A) because the Secretary failed to explain such denial in a manner that evinces reasoned decision making. At the very least, the Court should declare that the Secretary's failure to explain why the process to amend, update, and modernize the Marketing Order has not, as the Petition alleges, "broken down," renders such denial arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law under 5 U.S.C. § 706(2)(A);

(c)     Declare, pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201, that the Secretary of Agriculture's denial of Sun-Maid's Petition was arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law under 5 U.S.C. § 706(2)(A) because the Secretary failed to initiate rulemaking despite a fundamental change in the factual premises that gave rise to the Marketing Order's volume regulations;

(d)     Declare, pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201, that the Secretary of Agriculture's denial of Sun-Maid's Petition was arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law under 5 U.S.C. § 706(2)(A) because the

Secretary's failure to initiate rulemaking violated 7 U.S.C. § 608c(16)(A), and therefore arose from a plain error of law;

  (e) Vacate the Secretary's denial of Sun-Maid's Petition;

  (f) Remand Sun-Maid's Petition to the USDA with instruction that it reconsider such Petition, engage in reasoned decision making, and provide a response that evinces such reasoned decision making. At the very least, the Court should remand Sun-Maid's Petition to the USDA with instruction that it explain, in a manner that evinces reasoned decision making, why the process to amend, update, and modernize the Marketing Order has not, as the Petition alleges, "broken down;" and

  (g) Grant any and all additional relief as the Court deems necessary.

**Dated:** April 6, 2015          Respectfully submitted,

                */s/ M. Miller Baker*
                M. Miller Baker (Bar No. 444736)
                Arthur G. Sapper (Bar No. 227660)
                McDermott Will & Emery LLP
                500 North Capitol Street, N.W.
                Washington, DC 20001
                202-756-8000
                mbaker@mwe.com
                asapper@mwe.com

                Nicholas H. Rosinia (Bar No. 1014452)
                McDermott Will & Emery LLP
                227 W. Monroe Street
                Chicago, IL 60606
                Telephone: 312-372-2000
                nrosinia@mwe.com

                *Attorneys for Plaintiff*